IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK KINTE COURTNEY,<br><br>Petitioner,<br><br>vs.<br><br>KELLY HARRINGTON,[1] Warden, Kern Valley State Prison,<br><br>Respondent. | No. 2:08-cv-00823-JWS<br><br>MEMORANDUM DECISION |

Petitioner Derrick Kinte Courtney, a state prisoner appearing *pro se*, filed a petition for relief under 28 U.S.C. § 2254. Courtney is currently in the custody of the California Department of Corrections and Rehabilitation incarcerated at the Kern Valley State Prison. Respondent has answered the petition, and Courtney has filed a traverse.

I. BACKGROUND/PRIOR PROCEEDINGS

Following a jury finding that Courtney was competent to stand trial, a jury convicted him of first-degree murder (Cal. Penal Code, §§ 187(a); 189) with a finding that a principal was armed with a firearm in the commission of the offense (Cal. Penal Code § 12022.2(a)(1)). Then in a trial by court, the court found true a special circumstance allegation that Petitioner had a prior conviction for first-degree murder (Cal. Penal Code § 190.2(a)(2)). Courtney was sentenced to state prison for life without the possibility of parole plus an additional year for the armed finding, this term to run consecutively to a sentence he was then serving for the other first-degree murder.

---

[1] Kelly Harrington, Warden, Kern Valley State Prison, is substituted for Anthony Hedgepath, Warden, Kern Valley State Prison.

Courtney appealed the finding of competency to the California Court of Appeal, Third Appellate District, which affirmed the finding in an unpublished reasoned decision.² The California Supreme Court summarily denied review without opinion or citation to authority on March 19, 2008. Courtney timely filed his petition for relief in this Court on April 17, 2008.

## II. ISSUE PRESENTED

In his petition Courtney challenges his conviction on the grounds that he was incompetent to stand trial. Respondent has not pled any affirmative defenses.³

## III. STANDARD OF REVIEW

Courtney's petition is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."⁴ The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."⁵ Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"⁶ When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent

---

² The decision of the California Court of Appeal is accessible online at 2008 WL 62331 (Cal. App. 3 Dist.).

³ *See* Rules—Section 2254 Cases, Rule 5(b).

⁴ 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

⁵ *Williams*, 529 U.S. at 412.

⁶ *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008) (per curiam).

must be "objectively unreasonable," "not just incorrect or erroneous."[7] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[8] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[9]

In applying this standard, this Court reviews the last reasoned decision by the state court.[10] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[11]

To the extent that Courtney raises issues of the proper application of State law, they are beyond the purview of this Court in a federal habeas proceeding. A federal court must accept that state courts correctly applied state laws.[12]

## IV. DISCUSSION

Courtney contended on appeal that reversal of his conviction was required because the trial court prejudicially erred when it failed to appoint, *sua sponte*, the Director of the Regional Center for the Developmentally Disabled (hereafter the DRC) to evaluate his competency to stand trial. The California Court of Appeal, after determining that the trial court erred in not appointing the Director, held that the error was nevertheless harmless.

---

[7] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[8] *Schriro v. Landrigan*, 550 U.S. 465, ___, 127 S. Ct. 1933, 1939 (2007).

[9] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[10] *Ylst v. Nunnemaker*, 501 U.S. 797, 504 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[11] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[12] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

Since the defendant had been evaluated by experts in the field which, in turn, enabled the trier of fact to make an informed determination of defendant's competency to stand trial, defendant's right not to be tried while incompetent had been protected, and reversal was not required. (*Leonard, supra*, 40 Cal.4th at p. 1390.)

We reach a similar conclusion here. Although defendant should have been, but was not, evaluated by the DRC, the doctors who did evaluate him were qualified and acutely aware of his mental disability.

Dr. Carolyn Fowle received a doctorate in psychology from the University of the Pacific in 1966; she had been practicing as a clinical psychologist since that time and had seen "thousands" of patients; she had qualified as an expert witness in both state and federal court; and she was a member of American College of Forensic Psychology, the American Psychological Association and the California Psychologist's Association.

Dr. Fowle evaluated defendant and, based upon a personal interview with defendant and after reviewing prior reports of 12 or 13 other doctors who had examined him, opined that he had no mental disorders; that he was moderately mentally retarded based upon previous testing which showed his IQ to be in the range of 44 to 69; and that it was unlikely defendant could assist counsel in his defense. Therefore, she concluded, based upon his developmental disability of being mildly mentally retarded, he was incompetent to stand trial.

Dr. Lorin Frank also evaluated defendant. Dr. Frank had received his doctorate in psychology from the University of California, San Diego, and had been licensed to practice in California since 1979. For approximately seven years, Dr. Frank worked at a residential treatment center for adolescents providing therapy and testing for a variety of teenagers, including those who were "borderline mentally retarded[,]" but not those moderately or mildly retarded.

Dr. Frank had examined defendant in 1999 and 2002 and prepared reports. On both occasions Dr. Frank tested defendant and found his IQ to be about 69, a score placing him between mild and borderline retardation. In both 1999 and 2002, Dr. Frank had opined that defendant was not competent to stand trial based on his intellectual level. However, in September 2003, after reviewing the transcript of an interview of defendant conducted by a Detective Keller regarding an unrelated offense, Dr. Frank changed his opinion. While Dr. Frank still believed defendant was borderline mentally retarded, he now believed that defendant would be able to cooperate with counsel, and, therefore, was competent to stand trial.

Dr. Mark Hoffman received his doctorate from Brigham Young University and was presently employed at Folsom State Prison as a clinical psychologist, specializing in evaluating inmates who suffered brain damage or brain

impairment. Since 1984, Dr. Hoffman had evaluated over 100 individuals for competency to stand trial.

In October 2002, Dr. Hoffman interviewed defendant after having read reports from other psychologists which were given to him by defense counsel and which had concluded defendant was mildly mentally retarded and incompetent to stand trial. Based upon his interview with defendant, Dr. Hoffman found that defendant had no significant memory impairment, that he was capable of understanding facts presented to him in a relevant manner, and that while "his intellectual functions ... had some notable limitations[,]" he would be able to assist his counsel in a rational manner.

Dr. Hoffman's opinion was reinforced after he reviewed Detective Keller's interview with defendant. Defendant's interaction with Detective Keller was not indicative of someone who was mentally retarded. Dr. Hoffman also referred to the prior reports he believed the IQ tests were unreliable because of the wide variance in their range (44-69)-while a person could intentionally score low on an IQ test, one could not fake the test by scoring high. Dr. Hoffman had "no doubt" that defendant could assist his counsel in a rational manner.

Similar to the circumstances in *Leonard, supra,* 40 Cal.4th 1370, the record herein shows that defendant was evaluated by experts who understood his disability and who were qualified to advise the trier of fact about whether that disability might render defendant incompetent. Consequently, defendant's competency trial protected his constitutional right not to be convicted while incompetent.

We start with the observation of the Supreme Court in *Drope v. Missouri* that "[i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial"[13] The Supreme Court has "held that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial."[14] Unlike this case, no competency hearing was held in *Drope*. The precise issue presented to and decided by the Supreme Court in *Drope* was whether there was sufficient indicia of incompetence to require further inquiry into Drope's competence to stand trial. The Supreme

---

[13] 420 U.S. 162, 171 (1975).

[14] *Id.*, 420 U.S. at 172, citing *Pate v. Robinson*, 383 U.S. 375 (1966).

Court held that there was, and it was error not to make that inquiry.[15] Thus, other than to set a basic foundation, *Drope* is of no assistance to Courtney.

In *Medina v. California*, the Supreme Court, addressing the California competency scheme, held that once the State has met its due process obligation of providing a defendant access to procedures for making a competency evaluation, there is no basis for requiring it to assume the burden of vindicating the defendant's constitutional right not to be tried while legally incompetent by persuading the trier of fact that the defendant is competent to stand trial.[16] In this case, Courtney was accorded a competency hearing and a jury, after hearing the testimony of qualified experts in the field, found him competent to stand trial. A finding by which this Court is bound unless rebutted by clear and convincing evidence.[17] A burden Courtney has failed to shoulder. This is all the Constitution requires.[18] To the extent that there may have been a violation of California procedural law presents a question of state law, which, as noted above, is beyond the purview of this Court.

Based upon its review of the record before it, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[19] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

---

[15] *Id.*, 420 U.S. at 180–81. The Court found that the Missouri statutory scheme in respect to ascertaining whether an accused is competent to stand trial was, on its face, constitutionally adequate to protect a defendant's right not to be tried while legally incompetent. 420 U.S. at 173.

[16] 505 U.S. 437, 449–451 (1992).

[17] 28 U.S.C. § 2254(e)(1); *Miller-El*.

[18] *Medina*, 505 U.S. at 451 ("Consistent with our precedents, it is enough that the State affords the criminal defendant on whose behalf a plea of incompetence is asserted a reasonable opportunity to demonstrate that he is not competent to stand trial.").

[19] 28 U.S.C. § 2254(d).

## V. CONCLUSION AND ORDER

Courtney is not entitled to relief under the ground raised in the petition. Accordingly,

**IT IS THEREFORE ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[20] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter judgment accordingly.

Dated: March 6, 2009.

                /s/ John W. Sedwick
                JOHN W. SEDWICK
                United States District Judge

---

[20] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).